# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 14-1195V
Filed: March 7, 2017

```
* * * * * * * * * * * * * * *
```
SHANNON and WILLIAM POWERS,                     \*
Parents and Natural Guardians of L.P., a minor,  \*
                                                 \*          Special Master Sanders
              Petitioners,                       \*
                                                 \*
                                                 \*          Attorneys' Fees and Costs; Statute of
v.                                               \*          Limitations; Equitable Tolling; First
                                                 \*          Symptom or Manifestation of Onset;
SECRETARY OF HEALTH                              \*          Reasonable Basis
AND HUMAN SERVICES,                              \*
                                                 \*
              Respondent.                        \*
```
* * * * * * * * * * * * * * *
```

James B. Blumenstiel, Blumenstiel Falvo, LLC, Dublin, OH, for Petitioners.

Amy P. Kokot, United States Department of Justice, Washington, DC, for Respondent.

## DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

On December 12, 2014, Shannon and William Powers ("Petitioners") filed a petition for compensation under the National Vaccine Injury Program, 42 U.S.C. §300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"), on behalf of their minor child, L.P. Pet., ECF No. 1.

On April 8, 2016, Special Master Hamilton-Fieldman dismissed Petitioners' claim as untimely filed. Decision, ECF No. 51. Petitioners then moved for an award of attorneys' fees and costs. Mot. Att'y Fees & Expenses, ECF No. 55. After careful consideration, the undersigned has found that Petitioners' filing lacked a reasonable basis and denies Petitioners' motion for fees and costs.

---

[1] This decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Medical Records

According to Petitioners' medical records, L.P.'s physicians observed before her HPV vaccinations in 2011 that she was "[w]ell developed, well nourished, [and] well groomed." Pet'rs' Ex. 22 at 5, ECF No. 13-2.  She occasionally saw Dr. Linda Iskra, her primary care provider, for complaints such as dermatitis, headaches, pharyngitis, and urinary tract infections; and L.P. was briefly hospitalized in 2009 for "episodic abdominal pain."  Pet'rs' Ex. 22 at 3-4; Pet'rs' Ex. 23B at 4, ECF No. 13-4.

On February 19, 2011, L.P., eleven years old, was admitted to Nationwide Children's Hospital for abdominal pain and several other symptoms.[3]  Pet'rs' Ex. 22 at 42.  After an exploratory laparoscopy, L.P. was diagnosed with a necrotic left ovary and right ovarian torsion. Pet'rs' Ex. 23C at 12, ECF No. 13-5.  Emergency physicians performed a left oophorectomy, a "de-torsion" of her right ovary, and an incidental appendectomy.  Pet'rs' Ex. 22 at 42; Pet'rs' Ex. 23C at 3, 10.  She was discharged from the hospital on February 21, 2011.  Pet'rs' Ex. 22 at 42-43.  At her follow-up appointment on March 9, 2011, L.P. "[was] doing well."  Pet'rs' Ex. 23E at 15, ECF No. 13-7.  Despite her improved status, L.P. still had "occasional pain after urination," and her mother was "concerned about stomach bloating."  *Id.*

On March 30, 2011, L.P. received her first dose of Gardasil, the vaccination at issue in this case.  Pet'rs' Ex. 27A at 7, ECF No. 14-1.  L.P. received her second dose of Gardasil on August 8, 2011.  *Id.*

At L.P.'s next recorded medical visit on December 12, 2011, she complained of "right side pain 2 weeks prior to her periods" and "daily bloating after eating."  *Id.* at 21-22.  She received her third Gardasil dose on this date.  *Id.* at 22-23.  On January 9, 2012, she complained of bloating, abdominal pain, and fatigue.  Pet'rs' Ex. 27B at 6-7, ECF No. 14-2.  The treating physician recommended L.P. continue with Miralax and ordered a pelvic ultrasound and bloodwork.  *Id.* at 7.  The bloodwork results were within normal limits.  *Id.* at 6, 13.

L.P. did not see another provider until August 31, 2012, when she visited Dr. Kimberly Shepherd, an OB/GYN.  Pet'rs' Ex. 26 at 13, ECF No. 13-13.  Her chief complaint at this visit was bloating, although Dr. Shepherd noted that she appeared well nourished and developed.  *Id.* at 13-14.  L.P. returned for a follow-up visit on December 10, 2012.  *Id.* at 10-12.  L.P. reported no abdominal pain or any other symptoms during this visit.  *Id.* at 10-11.  One year later, on December 27, 2013, L.P. visited Dr. Shepherd for her annual visit with complaints of cramping. *Id.* at 9.

---

[3] These symptoms also included nausea, vomiting, abdominal tenderness with palpation, and burning after urination.  Pet'rs' Ex. 23C at 2.

On February 10, 2014, L.P. visited the emergency room with dysuria[4] and was discharged on the same day.  Pet'rs' Ex. 27B at 15.  Two days later, L.P. visited the emergency room again with the same symptoms and was discharged on the same day.  *Id.* at 21.  L.P. then sought treatment at the emergency room on June 11, 2014 for "consistent headaches for two months, pain increasing."  Pet'rs' Ex. 27D at 2-3, ECF No. 14-4.  Emergency room physicians diagnosed her with chronic headache and treated her with a migraine cocktail.  *Id.* at 5-7.

L.P. sought treatment over the following months for a variety of conditions including "headaches, blurry vision, migraines, optic disc abnormalities, fatigue, generalized pain, pelvic pain, urinary pain, overactive bladder, irritable bowel syndrome, heart palpitations, and joint pain."  Decision 3-4 (citations omitted).  In the fall of 2014, L.P. began to see Dr. DeMio, a primary care provider who specializes in treating chronic tick-borne infections and Autism Spectrum Disorder.  Pet'rs' Ex. 24, ECF No. 13-9; Pet'rs' Ex. 35 at 3, ECF No. 39-1.  Dr. DeMio's records are largely illegible, but medical records from Nationwide Children's Hospital refer to Dr. DeMio's records and indicate that, from November 2014 to January 2015, Dr. DeMio diagnosed L.P. with an immune deficiency disorder, metabolic disorder, encephalopathy, irritable bowel syndrome, and Lyme disease.  Pet'rs' Ex. 23E at 12, ECF No. 13-7; Pet'rs' Ex. 24A at 1.

Using this medical history as support, Petitioners filed their petition on December 12, 2014.  Pet. 1.  Petitioners alleged that L.P. began developing complications, including "stomach pain, bloating, feeling full, nauseated and bladder infection-like symptoms," after receiving her first Human Papillomavirus ("HPV") vaccination ("Gardasil") on March 30, 2011.  *Id.* at 1.  They further alleged that L.P.'s second and third HPV vaccinations, administered on August 8, 2011 and December 12, 2011, exacerbated her previous symptoms and caused new symptoms including "insomnia, night sweats, day sweats, and chills," among others.[5]  *Id.*

### B.  Motion to Dismiss

On July 21, 2015, Respondent filed a Motion to Dismiss Petitioners' Claim.  Mot. Dismiss, ECF No. 38.  In his Motion, Respondent argued that the case should be dismissed because of Petitioners' inability to clearly define the injury suffered by L.P. and because their petition was untimely.  *Id.* at 4-7.  Respondent claimed that Petitioners did not allege a "compensable, medically-recognized injury" sufficient to prove causation, and, "[i]n any event," they filed their petition "over nine months after the limitations period had expired."  *Id.* at 6.

Petitioners subsequently filed more medical records and an opinion letter from Dr. DeMio.  Pet'rs' Ex. 35-36, ECF Nos. 39-1, 39-2.  In this letter, Dr. DeMio wrote "it is my diagnosis that the HPV series [L.P.] received is the major cause of her problems."  Pet'rs' Ex. 35 at 1.  He opined that "[t]he sequence of events during and after the HPV vaccination series . . . along with the tests & her course in response to treatment during this time from the doctors,

---

[4] Dysuria is defined as painful, or difficult urination. *Dorland's Illustrated Medical Dictionary* ("*Dorland's*") 585 (32d ed. 2012).

[5] Although Petitioners alleged that L.P.'s second and third Gardasil vaccinations exacerbated her symptoms, they did not pursue a significant aggravation claim.  *See* Pet 1.

show [L.P.'s] severe physiologic decline, and this also rules out other etiologies [other than vaccine causation]." *Id.* Dr. DeMio explained that, in other cases of vaccine injury, the combination of "aluminum & the viral DNA" in the HPV vaccine caused "physiolog[ies]" similar to L.P.'s condition. *Id.* For medical support of this opinion letter, Petitioners submitted an article indicating that HPV DNA was found in the postmortem "blood and splenic tissue" of a young woman who died six months after receiving the HPV vaccine. Pet'rs' Ex. 42 at 1, ECF No. 48-1.

On August 6, 2015, Petitioners filed their response to Respondent's Motion. Pet'rs' Mem. Contra., ECF No. 42. Petitioners conceded that their petition was untimely but argued that equitable tolling should apply and preserve their claim. *Id.* at 7-11. Petitioners asserted that they were the victims of a "misrepresentation or omission" that created an "extraordinary circumstance" that warranted the application of equitable tolling. *Id.* at 9-10. Petitioners specifically highlighted that L.P.'s treating physicians told L.P. and her family that her symptoms were "post-operative complications" to her oophorectomy, and Petitioners relied upon this information. *Id.* at 4, 6, 9. Furthermore, Petitioners stated they discovered in 2014 that the Gardasil batch from which L.P. was vaccinated was "found to have a contaminant in it causing injury to people in many countries around the world." *Id.* at 10-11. Petitioners asserted that this fact, combined with the misdiagnosis of L.P.'s condition, required the application of equitable tolling. *Id.* at 13. Petitioners also argued that Dr. DeMio's opinion letter demonstrated causation between L.P.'s Gardasil vaccinations and her condition. *Id.* at 12.

Respondent filed his Reply on August 25, 2015. Resp't Reply, ECF No. 47. He argued that Petitioners' argument for equitable tolling was an attempt to insert a discovery rule into the Vaccine Act's statute of limitations. *Id.* at 3-4. Respondent cited the Federal Circuit's rejection of this argument in *Cloer v. Secretary of Health and Human Services* and argued that equitable tolling was not warranted. *Id.* at 4 (citing 654 F.3d 1322, 1344 (Fed. Cir. 2011)).

## C.  Special Master Hamilton-Fieldman's Decision

On April 8, 2016, Special Master Hamilton-Fieldman granted Respondent's Motion and dismissed Petitioners' claim as untimely. Decision 6-7. Special Master Hamilton-Fieldman held that Petitioners' claim was not filed within "36 months after the date of the occurrence of the first symptom or manifestation of onset [of the alleged vaccine injury]." *Id.* at 5 (quoting § 16(a)(2)). In order for Petitioners' claim to be timely, Special Master Hamilton-Fieldman held, "the first symptom or manifestation of onset [of L.P.'s condition] must have occurred no earlier than December 12, 2011," 36 months prior to the filing of Petitioners' claim. *Id.* at 6. Special Master Hamilton-Fieldman emphasized that the precise date of onset was "unclear" from the medical records and supporting documentation. *Id.* Petitioners' affidavits placed the onset of Petitioners' symptoms on March 30, 2011; however, Petitioners' medical records provided a range of dates for onset from August to October of 2011. *Id.* Regardless, both of these time frames placed the filing of Petitioners' claim outside the statute of limitations. *Id.*

Special Master Hamilton-Fieldman did not agree with Petitioners that equitable tolling should apply to their case. *Id.* Special Master Hamilton-Fieldman found that Petitioners were, in effect, trying to impute a discovery rule into the Vaccine Program through the use of equitable

tolling. *Id.* ("[Petitioners' arguments] simply ignor[e] the holding of *Cloer*, that the date of the first symptom or manifestation of onset 'does not depend on when a petitioner knew or reasonably should had known anything adverse about her condition.'" (quoting *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1339 (Fed. Cir. Aug. 5, 2011))).   Special Master Hamilton-Fieldman held Petitioners' knowledge of a misdiagnosis is "irrelevant" to triggering the statute of limitations. *Id.* at 7 (citing *Cloer*, 654 F.3d at 1339).   Petitioners did not appeal the dismissal.

### D.  Motion for Attorneys' Fees and Costs

On June 14, 2016, Petitioners filed a Motion for Attorney's Fees and Expenses.   Mot. Att'y Fees & Expenses, ECF No. 55.   Petitioners requested $15,603.75 in attorneys' fees and costs for 69.35 hours of work, at an hourly rate of $225.00. *Id.*   Petitioners also requested $1,997.20 for litigation costs, for a total request of $17,600.95. *Id.*

Respondent filed his Opposition to Petitioners' Motion for Attorneys' Fees and Costs on August 3, 2016.   Opp'n, ECF No. 57.   Respondent objected to awarding Petitioners attorneys' fees and costs as there was no reasonable basis for Petitioners' claim. *Id.* at 3.   Respondent cited the Vaccine Act that allows for a discretionary award of fees and costs to an unsuccessful petitioner if "the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." *Id.* at 3 (citing § 15(e)(1)).   Respondent did not contest the good faith basis for Petitioners' filing. *See generally id.*   Respondent argued that Petitioners' claim lacked a reasonable basis for two reasons.

First, Petitioners failed to provide evidence "to satisfy the Act's reasonable basis standard." *Id.*   Respondent asserted that Petitioners failed to identify "a particular injury purportedly caused by [the vaccinations], instead listing no fewer than nine symptoms . . . ." *Id.* These symptoms, moreover, Respondent argued, were not connected by a reliable medical theory to the vaccine itself. *Id.*   Second, Respondent argued that Petitioners' claim lacks a reasonable basis because it was untimely filed. *Id.* at 5.   Respondent claimed that Petitioners should have known that their petition was untimely when filed, and this fact precludes a reasonable basis for their claim. *Id.* at 5-6.   Respondent restated that Petitioners' argument invoking equitable tolling was only an attempt to apply the discovery rule, "which is not permissible." *Id.* at 5.

Petitioners filed their reply on August 11, 2016.   Reply, ECF No. 58.   They objected to Respondent's conclusion that Petitioners' claim lacked good faith and a reasonable basis.[6] *Id.* Petitioners' counsel argued that his clients' petition was filed in good faith by reciting in narrative form Petitioners' initial call to him. *Id.* at 2-3.   Petitioners' counsel stated that he realized the "36-month limitation" for the last vaccine was "only four days away," and he obtained affidavits and filed the petition "one day short of the 36-month period from the December 12, 2011 injection." *Id.* at 3-4.

---

[6] Petitioners argued that their claim met both standards, "good faith" and "reasonable basis," although Respondent only challenged the reasonable basis of the filing. *See* Opp'n 3-4.

Petitioners then argued that their petition was filed on a reasonable basis by reiterating their argument for equitable tolling. *Id.* at 6. Petitioners added that "any attorney . . . who did not file the Petition before the 36-month expiration for the three Gardasil shots . . . would be exposed to a legal malpractice suit." *Id.* Petitioners restated the argument that Petitioners' treating physicians' misdiagnoses of L.P. constituted an "extraordinary circumstance" for which equitable tolling should apply. *Id.* Petitioners also expanded their prior argument for "extraordinary circumstances." *Id.* at 8-9. Not only was the Gardasil vaccine L.P. received "contaminated," Petitioners claimed, but Gardasil's manufacturer, Merck, failed to warn Petitioners of this "contamination." *Id.* at 8. This failure to warn constituted an "omission," Petitioners asserted, that warranted equitable tolling. *Id.* Finally, Petitioners' Reply attached articles with quotes from former Merck physicians and researchers speaking critically of Merck, Gardasil, and vaccines generally. ECF Nos. 58-1 to 58-11.

## II.    STANDARDS FOR ADJUDICATION

When a petitioner in the Vaccine Program does not prevail on his or her claim, a special master may award attorneys' fees and other costs if "the petition was brought in good faith and there was a reasonable basis for which the petition was brought." § 15(e)(1); *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013). The Vaccine Act statute of limitations forbids a petition "after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." § 16(a)(2); *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1336-37 (Fed. Cir. 2011). However, equitable tolling may apply to the Vaccine Act statute of limitations, based upon "extraordinary circumstances." *Wax v. Sec'y of Health & Human Servs.*, No. 03-2830V, 2012 WL 3867161, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2012).

### A.  Good Faith and Reasonable Basis

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 479152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if she honestly believes that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Respondent does not contest that the petition was filed in good faith, and there is no evidence that this petition was brought in bad faith. I therefore find that the petition was brought in good faith.

Respondent does, however, contest the reasonable basis for this petition. The Federal Circuit has not interpreted "reasonable basis," or provided any guidance as to how petitioners satisfy the reasonable basis standard. *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 285 (2014) (citing *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148 (2012)). In the absence of guidance, special masters have taken different approaches. *Silva v. Sec'y of Health & Human Servs.*, No. 10-101V, 2012 WL 2890452, at *8-10 (Fed. Cl. Spec. Mstr. June 22, 2012), *mot. for rev. denied*, 108 Fed. Cl. 401 (2012).

Recent decisions have examined whether any evidence supports "the claim for which the petition was brought." The statute's use of the phrase "reasonable basis for which the petition was brought" is consistent with other portions of the statute that require the petition to be filed with evidence. *See Chuisano v. Sec'y of Health & Human Servs.*, No. 07-452V, 2013 WL 6234660, at *8-10 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), *mot. for rev. denied*, 116 Fed. Cl. 276 (2014). Special masters should look to the "totality of the circumstances" when reviewing evidence for a reasonable basis. *Chuisano*, 116 Fed. Cl. at 286. Evidence that is relevant to this inquiry may include medical records, affidavits from percipient witnesses, and opinions from retained experts. *See* 42 U.S.C. § 300aa-11(c). In considering the totality of circumstances, factors to be examined are "'the factual basis, the medical support, and jurisdictional issues,' and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). "The burden is on the petitioner to affirmatively demonstrate a reasonable basis." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011), *decision on remand vacated*, 2012 WL 1884703 (May 3, 2012). A claim may have a reasonable basis even if it is untimely filed. *Chuisano*, 116 Fed. Cl. at 288 (citing *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1359-61, 1364 (Fed. Cir. 2012)). However, an untimely petition can lack a reasonable basis when "[a] review of the relevant case law and [the] medical records should have alerted petitioners and their counsel that this case was untimely." *Somosot v. Sec'y of Health & Human Servs.*, 120 Fed. Cl. 716, 721 (2015).

## B. Statute of Limitations

The statute of limitations contained within the Vaccine Act reads "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence *of the first symptom* or *manifestation of onset* or of the significant aggravation of such injury." § 16(a)(2) (emphasis added). The Vaccine Act does not contain a discovery rule, explicit or implicit, where the statute of limitations begins once the petitioner knows that her alleged injury was caused by a vaccine. *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1336-37 (Fed. Cir. 2011).

Equitable tolling is generally available in Vaccine Act litigation. *Id.* It may be available when a petitioner can show "for example, [he or she] has been the victim of a fraud, or of duress." *Id.* at 1344. Equitable tolling can apply when the opposing party commits fraud against the claimant. *See Id.* at 1344-45 (citing *Bailey v. Glover*, 88 U.S. 342, 349-50 (1874) ("To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the *party committing the fraud* could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.") (emphasis added)).

Following *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) and *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), the Federal Circuit has held that, for equitable tolling to apply, a petitioner must "[establish] two elements: (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance" such as "defective pleading, fraud, or duress . . . stood in the way." *Wax v. Sec'y of Health & Human Servs.*, No. 03-2830V, 2012 WL 3867161, at *3, *10 (Fed. Cl. Spec. Mstr. Aug. 7, 2012). "Extraordinary circumstances" are

situations that are more than unusual; they are "unique" and "rare" in their occurrence.  *Mojica v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 96, 100-01 (2011) (finding equitable tolling where petitioner's petition was lost twice by a "[w]ell-established and well-known" courier service).

Special masters have found that equitable tolling may also apply based upon mental incapacitation.  *Gray v. Sec'y of Health & Human Servs.*, No. 15-146V, 2016 WL 787166 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *Hodge v. Sec'y of Health & Human Servs.*, No. 09-453V, 2015 WL 9685916 (Fed. Cl. Spec. Mstr. Dec. 21, 2015).  However, equitable tolling is not available to a petitioner "due to unawareness of a causal link between an injury and administration of a vaccine . . . ." *Cloer*, 654 F.3d at 1345.

## III.    DISCUSSION

Upon review of the records and the parties' motions, I do not find that Petitioners demonstrated a reasonable basis for their claim, nor do I find their arguments that equitable tolling applies persuasive.  For the following reasons, I deny Petitioners' request for attorneys' fees and costs.

In determining whether there was a reasonable basis for the present petition, the undersigned considered the totality of the circumstances, *see Chuisano*, 116 Fed. Cl. at 288, including the factual bases and medical support for the petition, as well as the jurisdictional issues.  *Id.*  Under the factual basis surrounding the petition, special masters can consider the circumstances of the petition's filing itself.  *See Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2016 WL 4272069, at *3 (Fed. Cl. Spec. Mstr. June 22, 2016) (finding reasonable basis where the "precise cut-off date" of the statute of limitations was unknown by petitioner's counsel), *remanded on other grounds*, 2017 WL 217704 (Fed. Cl. Jan. 3, 2017).

### A.  Factual and Medical Bases

Petitioners highlight the short period of time counsel possessed before he believed the statute of limitations would expire.  Reply 6. Petitioners' counsel argued that his clients told him that they had a physician's opinion that L.P. was vaccine-injured.  *Id.* at 7.  Petitioners' counsel therefore believed that he could prove causation and consequently filed the petition "within one and one-half days" after speaking to Petitioners.  *Id.* at 4.

I am unpersuaded that Petitioners' rushed filing supports a reasonable basis.  Even with the compressed time frame, Petitioners' counsel was in possession of the dates of L.P.'s vaccinations, and he stated that he expressed concerns about the statute of limitations to his clients based upon the dates Petitioners gave him.  Reply at 3 ("Immediately, I was concerned because December 12, 2014 (the 36-month limitation) was only four days away and would be the 36th month since the last injection . . . .").  According to Petitioners, pertinent information, like the date of vaccination and the onset of symptoms, was already known to Petitioners and their counsel by the date of filing their petition.  *Id.* at 5 ("There was no doubt she became more symptomatic after the first injection [March 30, 2011], but she had been in a painful healing condition ever since her surgery on February 20, 2011.").  Consequently, Petitioners and their

counsel should have known that their petition was untimely.  *See Somosot v. Sec'y of Health & Human Servs.*, 120 Fed. Cl. 716, 721 (2015) ("A review of the relevant case law and [the] medical records should have alerted petitioners and their counsel that this case was untimely.").

### B.  Jurisdictional Issues

Petitioners argue that L.P.'s physicians' misdiagnoses and Merck's failure to notify Petitioners of a "contaminated" Gardasil batch constitute "extraordinary circumstances."  Reply 8.  Petitioners claim that these "extraordinary circumstances" trigger the application of equitable tolling and this creates a reasonable basis for their petition.  *Id.* at 6-8.  I disagree.[7]

Petitioners allege that Merck's failure to inform them of the "contaminated" lot of Gardasil constitutes a fraud sufficient for equitable tolling.  *Id.* at 8.  Unfortunately for Petitioners, Merck, the allegedly fraudulent entity, is not their adversarial party.  *See Bailey*, 88 U.S. at 349-50 (cited in *Cloer*, 654 F.3d at 1344).  Petitioners do not allege that Respondent defrauded them or otherwise denied Petitioners from diligently pursuing their legal rights.  *See* Reply 8.  Therefore, Petitioners cannot avail themselves of equitable tolling through fraud.

Petitioners' claims for "extraordinary circumstances" warranting equitable tolling are similarly unsuccessful.  "Extraordinary circumstances" are those that are uniquely rare.  *Mojica v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 96, 100-01 (2011) (citing *Oh v. Gonzales*, 406 F.3d 611, 613 (9th Cir. 2005)).  Misdiagnoses are unfortunately common and do not constitute the rare circumstances that warrant equitable tolling.

Equitable tolling has been found to apply in the Vaccine Program when a petitioner is mentally incapacitated to the degree that she could not pursue her legal rights.  *Gray v. Sec'y of Health & Human Servs.*, No. 15-146V, 2016 WL 787166 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *Hodge v. Sec'y of Health & Human Servs.*, No. 09-453V, 2015 WL 9685916 (Fed. Cl. Spec. Mstr. Dec. 21, 2015).  Petitioners did not present any evidence that they were mentally incapacitated to the degree that they could not pursue their legal rights.  *See Wax*, 2012 WL 3867161 at *10 (petitioner must show that they "[have] been pursuing [their] rights diligently, and [] that some extraordinary circumstance stood in [their] way").

Finally, a petition does not warrant equitable tolling "due to [an] unawareness of a causal link between an injury and administration of a vaccine . . . ."  *Cloer*, 654 F.3d at 1345.  Equitable tolling cannot be used by petitioners to insert a discovery rule into the Vaccine Act.  *Cloer*, 654 F.3d at 1339 (holding that the date of onset "does not depend on when a petitioner knew or reasonably should have known anything adverse about her condition").  Therefore, Petitioners' arguments that L.P.'s physicians misdiagnosed her symptoms have no weight in finding a reasonable basis for equitable tolling.  Consequently, Petitioners are unable to show a reasonable basis through an argument for equitable tolling.

---

[7] This decision does not preclude that a petitioner could show a reasonable basis through an unsuccessful, but otherwise colorable, argument for equitable tolling.  For the purposes of this case, however, Petitioners were unable to do so.

## IV.   CONCLUSION

Petitioners in Vaccine Act litigation must show that their petition was filed in good faith and on a reasonable basis in order to be eligible for attorneys' fees and costs. Petitioners in the present case did not establish a reasonable basis for their petition. Petitioners' Motion for Attorneys' Fees is therefore **DENIED**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.[8]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint or separate filing of a notice renouncing the right to seek review.